IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

BETTY J. THOMAS                                                                                                    PLAINTIFF

v.                                        Case No. 5:08CV00316 JLH

ARKANSAS DEPARTMENT OF CORRECTION;
LARRY NORRIS, Director, in both his individual
and official capacities; BRENDA J. BEARDEN,
Deputy Administrator, in both her individual and
official capacities; and SYLVESTER TILLMAN,
Lieutenant, in both his individual and official capacities         DEFENDANTS

**OPINION AND ORDER**

Betty J. Thomas commenced this action on December 2, 2008, alleging sex and race discrimination in violation of her rights under 42 U.S.C. § 1983 and Title VII, 42 U.S.C. § 2000 *et seq.*, and seeking relief against the Arkansas Department of Correction, Director Larry Norris, Deputy Administrator Brenda J. Bearden, and Lieutenant Sylvester Tillman for wrongful termination. The defendants have filed a motion for summary judgment, and the plaintiff has responded. For the following reasons, the defendants' motion for summary judgment is granted.

**I.**

Betty J. Thomas, an African American female, was hired by the ADC as a correctional officer in September 1999. In January 2008, she was assigned to the Diagnostic Unit in Pine Bluff, Arkansas. In the Diagnostic Unit, Thomas reported to Sergeant Harold Dennis, her immediate supervisor. Both Thomas and Dennis reported to Lieutenant Sylvester Tillman. Thomas was responsible for guarding inmates when they were sent to outside medical facilities. Thomas alleges that neither she nor any of the other officers were given clear rules or methods for controlling inmates or policies regarding the duties of correctional officers in monitoring inmates in private

hospital settings. Thomas also alleges that Lieutenant Tillman prohibited correctional officers from using physical restraints on inmates at hospitals.

On July 21, 2008, Thomas was assigned to ADC Inmate Jeffrey Davis at the University of Arkansas Medical Center in Room 218. Inmate Davis was confined to the hospital bed with soft restraints. Thomas alleges that, at about 12:45 a.m., she allowed Davis to get up from his hospital bed to go to the bathroom. After she watched Davis step into the bathroom, Thomas called the nurses' desk and asked, "Is he suppose[d] to be up?" Pamela Parsons, the nurse who answered the phone, replied, "I'm not sure. I will check with his nurse." At about the same time, Licensed Practical Nurse Ashley Riffel, who was standing at the nurses' station, saw Inmate Davis running unescorted down the hall toward the nurses' station. Davis stopped briefly at the nurses' station and then ran into the day room. Riffel went into Room 218 where Thomas was getting up out of her chair and told Thomas that Davis was running down the hall. Thomas and Patient Care Technician Clement Aladesofi went to the day room and escorted Davis back to Room 218. While Aladesofi was straightening Davis's bed and Thomas was picking up restraints, Davis ran out of the room a second time. Thomas and Aladesofi chased after Davis, apprehended him, escorted him to Room 218, placed soft restraints on his hands, and shackled his left leg to the bed rail.

At approximately 1:00 a.m., Officer James Kevin Julian of the UAMS Police Department was dispatched to the floor. He was advised "that a prisoner was running loose on the floor and that the guard assigned to the inmate had fallen asleep." Upon his arrival, he found Inmate Davis in his hospital bed and shackled with a leg restraint. Julian took written statements from three witnesses—Riffel, Parsons, and Aladesofi—and wrote a narrative of the incident. In his narrative, Julian reported that Riffel told him that Thomas "was getting out of the chair in a state of

drowsiness." During his investigation, Julian told Thomas that "I would have to contact her supervisor of the allegation concerning her sleeping at the time of the incident." Thomas denied sleeping and said she "was aware that the prisoner had removed the soft restraints, the NG tube, the iv lines and other medical equipment so as to get out of bed and use the restroom." At approximately 1:40 a.m., Thomas called Lieutenant Tillman at his home and advised him of the situation.

When Tillman arrived at work on the morning of July 21, 2008, he contacted the UAMS Police Department and obtained a copy of the witness statements and incident report. Based on the documents provided, Tillman suspended Thomas from the ADC for four violations of Employee Conduct Standards AD 00-10: (1) unsatisfactory work performance (standard 6(a)); (2) sleeping while on duty (standard 14(a)); (3) inattentiveness while on duty (standard 14(b)); and (4) failure to perform or carry out work-related instructions (standard 17(a)). On July 23, 2008, Thomas met with Tillman and Bearden to discuss the incident, and Bearden terminated Thomas that same day. According to the termination letter, "it was reported that [Thomas] was asleep on the job and did not know the location of Inmate Davis for a period of time long enough for him to exit the hospital room and proceed down the hallway," and "[t]his action is a major violation of a conduct standard affecting the security and good order of departmental operations."

Per ADC policy, Thomas filed a grievance, alleging that she had been discriminated against because of her race and sex and that her termination was unjust. ADC Director Larry Norris utilized an internal review committee to hear the grievance. On August 13, 2008, the committee conducted a hearing on Thomas's grievance and upheld Bearden's decision to terminate Thomas. In a decision

dated August 25, 2008, Norris adopted the committee's recommendation to uphold Thomas's termination.

## II.

A court should enter summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. If the moving party meets this burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all inferences in his favor, mindful that summary judgment seldom should be granted in discrimination cases where claims are often based on inferences. *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000) (collecting cases). *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

### III.

Thomas asserts claims for relief pursuant to both 42 U.S.C. § 1983 and Title VII, 42 U.S.C. § 2000 *et seq.*  Although Title VII claims and section 1983 claims are analyzed under the same standard, only employers may be held liable under Title VII; supervisors may not.  *See* 42 U.S.C. 2000e-2(a)(1) (2006) ("It shall be an unlawful employment practice for an *employer* to . . . .") (emphasis added); *Bonomolo-Hagen v. Clay Cent.-Everly Cmty. Sch. Dist.*, 121 F.3d 446, 447 (8th Cir. 1997) (reiterating that supervisors may not be held individually liable under Title VII).  The plaintiff concedes that separate defendants Norris, Bearden, and Tillman are not employers under Title VII.  Thus, the Title VII claims against Norris, Bearden, and Tillman should be dismissed.

### IV.

In analyzing Thomas's employment discrimination claims, the Court uses the familiar *McDonnell Douglas* burden-shifting framework.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) (establishing the burden-shifting test in the context of a Title VII claim); *Ottman v. City of Independence, Mo.*, 341 F.3d 751, 756 (8th Cir. 2003) (applying *McDonnell Douglas* to a section 1983 claim).  The plaintiff must first establish a prima facie case of discrimination.  To establish a prima facie case of discrimination, the plaintiff must show that (1) she is a member of a protected class, (2) she was meeting her employer's legitimate job expectations, (3) she suffered an adverse employment action, and (4) there are facts that give rise to an inference of discrimination.  *Wells v. SCI Mgmt., L.P.*, 469 F.3d 697, 700 (8th Cir. 2006) (citing *Rorie v. United Parcel Serv., Inc.*, 151 F.3d 757, 760-61 (8th Cir. 1998)).  If the employee establishes a prima facie case, then the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the termination, meaning that the presumption of unlawful discrimination disappears.  *Carraher*

*v. Target Corp.*, 503 F.3d 714, 717 (8th Cir. 2007) (citing *Thomas v. Corwin*, 483 F.3d 516, 529 (8th Cir. 2007)). If the employer provides such a reason, the plaintiff must then show that the proffered reason is a pretext for the unlawful discrimination. *Id.* Where an employee is unable to show pretext, summary judgment is appropriate. *Pierce v. Marsh*, 859 F.2d 601, 604 (8th Cir. 1988).

Without contesting the first three elements of the prima facie case, the ADC argues that there are no facts that give rise to an inference of discrimination because no similarly situated Caucasian or male employees were treated differently than Thomas. "If comparative evidence is relied on by a plaintiff to support the final element of her prima facie case, courts . . . require such proof and so characterize the fourth element." *Lewis v. Heartland Inns of America, L.L.C.*, 591 F.3d 1033, 1040 (8th Cir. 2010). In other words, a plaintiff who alleges that similarly situated employees outside of the protected class were treated differently than the plaintiff must support that allegation with evidence. At the prima facie stage of the analysis, the standard for determining whether employees are similarly situated is a "low threshold" and merely requires that the employees "are involved in or accused of the same or similar conduct and are disciplined in different ways." *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 851-52 (8th Cir. 2005); *see also Wimbley v. Cashion*, 588 F.3d 959, 962 (8th Cir. 2009) (applying the low-threshold standard in light of the Eighth Circuit's analysis in *Rodgers*). A successful summary judgment defense must include more than inadmissible hearsay-based evidence, however. *Cronquist v. City of Minneapolis*, 237 F.3d 920, 927 (8th Cir. 2001); *JRT, Inc. v. TCBY Sys., Inc.*, 52 F.3d 734, 737 (8th Cir. 1995). Here, Thomas contends that a white male officer, Sterling Ivy, fell asleep while he was guarding an inmate at another hospital and was not disciplined by the ADC. Tillman, who was also Officer Ivy's supervisor, states in his affidavit that Ivy never fell asleep on duty and was not accused of falling asleep on duty. Thomas concedes that

she did not see Ivy fall asleep while on duty; rather, she testified that Officer Hardin, another coworker, told her about the alleged incident, but neither Thomas nor Hardin was present when the incident occurred. Thomas's allegations regarding Ivy are solely based on hearsay. Thus, Thomas has failed to provide evidence that a similarly situated employee was treated differently than she was treated.

"Comparative evidence is certainly not the exclusive means by which a plaintiff may establish an inference of discrimination . . . ." *Lewis*, 591 F.3d at 1040 (internal quotations omitted). Thomas worked for the ADC for nine years without any prior disciplinary actions. Thomas alleges that Lieutenant Tillman at times met with male officers prior to their shifts to provide them with special instructions but did not meet with Thomas or Verna Kentle, the other female officer in the Diagnostic Unit, prior to their shifts. Finally, Thomas argues that she was not asleep when Davis left his hospital room as was alleged in her termination letter.

Even if these allegations are sufficient to meet Thomas's initial burden under the *McDonnell-Douglas* framework, they are not evidence of pretext. The ADC has articulated a legitimate, nondiscriminatory reason for terminating Thomas's employment: she was "asleep on the job and did not know the location of Inmate Davis for a period of time long enough for him to exit the hospital room and proceed down the hallway." Thus, the burden returns to Thomas to show that this proffered reason for terminating her is pretext for discrimination. A plaintiff may prove pretext by establishing that an employer's proffered reason for terminating her has no basis in fact. *Stallings v. Hussman Corp.*, 447 F.3d 1041, 1052 (8th Cir. 2006). "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147, 120

S. Ct. 2097, 2108, 147 L. Ed. 2d 105 (2000).  Here, Thomas admits that she did not know Davis's location for a period of time long enough for him to sneak out of his hospital room and run down the hallway.  However, Thomas contends that she was not asleep at the time—she was on the phone with the nurses' station.  According to the ADC's Employee Conduct Standards:

> [s]leeping while on duty may be substantiated by firsthand witness testimony or circumstantial evidence which shows that employee's actions were so significantly failing to meet standards of being alert, that there can be no substantive difference between the alleged behavior of one who would be found asleep under the same circumstances.

Julian stated in his incident report that he was dispatched to the floor because "a prisoner was running loose on the floor" and "the guard assigned to the inmate had fallen asleep."  Furthermore, Julian wrote that Riffel "advised that he made contact with the guard who at the time was getting out of the chair in a state of drowsiness."  Riffel's written statement notes that Thomas was getting out of the chair when Riffel walked in the room to inform her that Davis was in the hallway.  Regardless of whether Thomas was asleep or on the phone prior to the incident, the ADC could conclude from the evidence that Thomas significantly failed to meet standards of being alert.  Thomas has failed to show that the ADC's reason for terminating her has no basis in fact.  It is not the task of the court to determine whether the ADC's investigation was sufficiently thorough or fair.  *Rorie*, 151 F.3d at 761.  Rather, the relevant inquiry is whether Thomas has created a genuine issue of material fact as to whether her termination was discriminatory.  *Id.*  She has not.[1]

---

[1] Thomas's bare assertion that Lieutenant Tillman gave special instructions to male officers but not female officers is unsupported and thus insufficient to support an inference of pretext.  *See Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998) ("Conclusory affidavits, standing alone, cannot create a genuine issue of material fact precluding summary judgment.")

Based on this evidence, a reasonable jury could not find that the ADC's stated reason for firing Thomas is pretext for discrimination, so the ADC is entitled to summary judgment on Thomas's claims.[2]

## CONCLUSION

For the foregoing reasons, the defendants are entitled to summary judgment on Thomas's section 1983 and Title VII claims, and the defendants' motion for summary judgment is GRANTED. Document #18.

IT IS SO ORDERED this 29th day of April, 2010.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

[2] To the extent that Thomas attempts to raise due process and equal protection claims in her response to the motion for summary judgment, the Court finds such claims untimely.